ANDERSON, J.
delivered the opinion of the court.
This is a bill brought by William Nunn and wife for the partition of the lands of which Joseph Clark dies seized amongst his heirs-at-law, of which they are entitled to one-sixth,, and which are part of a tract of three hundred and ninety acres, which had been assigned to the widow of Rugate Clark for and during her life, and which were at her death to be divided amongst his eight children, of whom the female plaintiff was one. The bill alleges that the plaintiff, William *Nunn, had purchased the half of one other share in reversion, which entitled the plaintiffs to three sixteenths in the reversion, and that the residue of the shares had been purchased by Joseph Clark, the brother of the female plaintiff, and of the defendants, who died intestate and without issue; and that they and the said Joseph had made a parol partition after the death of the widow, and their three-sixteenths were laid off to them by metes and bounds, of which they had held the exclusive possession ever since; and they ask that the same may be confirmed.
The appellant, Randolph Clark, who is also ‘a brother of Joseph Clark, deceased, objects to the confirmation of said partition, denies the right of the plaintiffs to said three-sixteenths, and claims the right to the same himself under a contract made with the plaintiff, William Nunn, on the 16th of June, 1841, which he exhibits with his answer. On the 21st of April, 1869, the Circuit court of Pulaski county pronounced a decree, adjudging the plaintiffs to be entitled to the said three-sixteenths, and confirming the partition which had been made between them and Joseph Clark, deceased, from which decree the defendant, Randolph Clark, appealed to this court.
The case turns upon the construction of the said contract of June 16th, 1841, and the question is, was it the intention and design of the parties to make partition of their interests in the reversion, expectant upon the termination of the widow’s life estate therein, or only of their interests in'possession in the real estate of Rugate Clark, deceased. The contract is very inartificially and awkwardly drawn, and is by no means clear and explicit, and should be construed in the light of the surrounding circumstances.
It seems that at the time it was entered into, there *was depending in court a proceeding instituted by William Nunn, or the plaintiffs, to have laid off and assigned to them their shares in the real estate of the said Rugate Clark, deceased, and that three commissioners had been appointed by the court to lay it off. The record of that proceeding is not exhibited with this record. But it is evident that it could not have been designed to lay off their interest in that part of the estate which was to be assigned to the widow, and which was assigned to her a few days after the date of this contract; because by the .terms of the will, it was not to be divided until after the death of the widow.
The commissioners, it seems, had met upon the ground to lay off to the plaintiffs their interests in the real estate, not including their interest in the reversion, when the contract in question was entered into, by which the parties themselves agreed how it should be laid off; and two parcels were laid off to them by metes and bounds, amounting together to one hundred and seventy-two-and-a-half acres. Afterwards, three hundred and ninety acres were laid off and assigned to the widow, not including any portion of the one hundred and seventy-two-and-a-half acres which had been laid off to the plaintiffs. The inference would be, that the allotment made to them was exclusive of their interest in the dower, which was not subject to partition, by the purport of the will of Rugate Clark, until after the death of the widow.
And this construction is confirmed by the conduct of the parties, by their acts and declarations. On the 22d of April 1843, about two years after this contract was made, Randolph Clark united with his brothers Reuben and John in a conveyance of their interests in the reversion to Joseph Clark, which they describe as being three-eighths and one half-eighth. Reuben *385 had *previously purchased the one-half of his sister, Rachel, which gave him three-sixteenths, he being- entitled, under the will of his father, to one-eighth, which left to each of the other grantors, Randolph and John Clark, in the interests conveyed one-eighth ; which cannot be otherwise construed than as a solemn acknowledgment by Randolph Clark, inferentially, that he at that time, did not claim the appellees’ interest in the reversion. If he had then claimed their shares, under the contract in question, his interest would have been two-eighths and a half, instead of only one-eighth. We regard this act of the appellant, two years after he entered into the contract in question, as a construction upon it which repels that which he now gives to it. It is the evidence of cotemporaneous construction by the party, who, long years afterwards, seeks to avoid it. On the other hand, the plaintiffs, the appellees here, have ever maintained that they did not intend to part with their interest in the dower land. And the possession has ever been consistent with their construction of the contract, from the time it was entered into, down to the filing of appellant’s answer in this cause ; a period of exactly twenty-six years to the day. And the rights of the appellees were recognized and acknowleged by the owner of all the other interests in the reversion, from the termination of the life estate to the day of his death. Upon the whole, the court is of opinion that there is no error in the decree of the Circuit court, and that the same be affirmed with costs and damages to the appellees.
Decree affirmed.